IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-290-D

| | | |
|---|---|---|
| TIMOTHY WAYNE BROWN and JOANN BROWN, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | **ORDER** |
| JEFF P. FRAZIER and HALIFAX COUNTY, | ) ) ) ) | |
| Defendants. | ) | |

On December 6, 2012, spouses Timothy Wayne Brown and Joann Brown (collectively, "Browns" or "plaintiffs") filed suit against Halifax County Sheriff Jeff P. Frazier ("Frazier") and Halifax County ("County") (collectively, "defendants"). Compl. [D.E. 1]. The suit arises out of alleged wrongful conduct of certain Halifax County Sheriff's deputies in response to the Browns' call for emergency medical assistance on December 9, 2011. The Browns assert claims under 42 U.S.C. § 1983, the Fourth and Fifth Amendments, and North Carolina tort law against Frazier and Halifax County. Essentially, they allege that the County and Frazier failed to adequately train and supervise the deputies. See id. ¶¶ 73–129.

On April 11, 2013, defendants moved to dismiss the complaint for failure to state a claim [D.E. 10–11]. See Fed. R. Civ. P. 12(b)(6). The Browns responded in opposition [D.E. 15], and defendants replied [D.E. 18]. On May 31, 2013, the Browns moved to amend their complaint [D.E. 16–17]. On June 24, 2013, defendants responded in opposition [D.E. 19]. As explained below, the court grants defendants' motion to dismiss, dismisses the Browns' federal claims, declines to

exercise supplemental jurisdiction over their state law claims, dismisses the state law claims without prejudice, and denies the Browns' motion to amend their complaint as futile.

I.

The Browns reside in Roanoke Rapids, North Carolina. Compl. ¶ 8. On the morning of December 9, 2011, Mr. Brown suffered what Mrs. Brown believed to be a diabetic seizure and was in extreme medical distress. Id. ¶¶ 18–19. Mrs. Brown called the Halifax County Central Communications Center for emergency assistance. Id. ¶ 17. A responder from the county fire department, Hedgepeth, arrived first. Id. ¶ 21. Shortly thereafter, Halifax Emergency Management Services ("EMS") personnel arrived, took Mr. Brown's blood sugar level, and repeatedly asked Mrs. Brown what drugs Mr. Brown had used. Id. ¶¶ 26, 28. Mrs. Brown repeatedly told the EMS personnel that Mr. Brown had never used drugs. Id. ¶ 29.

Hedgepeth called for law enforcement officers, claiming that Mr. Brown was being combative. Id. ¶ 24. About ten minutes later, several Halifax County Sheriff's deputies entered the Browns' house without knocking. Id. ¶¶ 25, 31. According to the complaint, the deputies then "attacked" Mr. Brown, "hitting him, kicking him, kneeing him, [and] placing handcuffs and shackles on him." Id. ¶ 33. The deputies also asked Mrs. Brown what drugs Mr. Brown had used. Id. ¶¶ 34, 37, 39. Mrs. Brown repeated that Mr. Brown did not use drugs. Id. ¶ 38. The deputies then conducted a warrantless search of the Browns' house and found no drugs. Id. ¶¶ 36, 40.

Eventually, the EMS personnel transported Mr. Brown to the hospital. Id. ¶ 45. Mr. Brown remained handcuffed for the ride, and the handcuffs were so tight that they injured his wrists. Id. ¶ 46. The deputies "stepped on Mr. Brown's knuckles, kicked him in his sides and in the back, elbowed him in his face and back, and in other ways brutalized Mr. Brown for no reason." Id. ¶ 47.

2

At the hospital, the deputies ran drug tests on Mr. Brown without his consent. Id. ¶ 48. The drug tests were negative. Id.

The Browns filed suit against Frazier and Halifax County. Id. ¶¶ 9–10. The Browns allege violations of federal and state law arising from defendants' failure to adequately train and supervise personnel. Id. ¶¶ 56, 67–70. In their complaint, the Browns did not sue the deputies, Hedgepeth, or the EMS personnel.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must determine whether a claim is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A court need not accept a claimant's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see Iqbal, 556 U.S. at 678–79. However, the court "accepts all well-pled facts as true and construes these facts in the light most favorable to the [claimant] in weighing the legal sufficiency of the complaint." Nemet Chevrolet, 591 F.3d at 255.

As for their federal claims, the Browns seek relief under 42 U.S.C. § 1983 and claim that defendants are responsible for violating their Fourth Amendment right against unreasonable searches and seizures and Fifth Amendment due process rights. See Compl. ¶¶ 82–91. The court construes the due process claim to be a claim under the Fourteenth Amendment, instead of the Fifth Amendment. In their response to defendants' motion to dismiss, the Browns concede that the County cannot be held liable in this suit. See [D.E. 15] 9; see, e.g., Parker v. Bladen Cnty., 583 F.

3

Supp. 2d 736, 739–40 (E.D.N.C. 2008). Thus, the court dismisses the County and analyzes whether the Browns have stated a claim under section 1983 against Frazier.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). To establish liability under section 1983, a plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, causing injury. See, e.g., West v. Atkins, 487 U.S. 42, 48 (1988); Crosby v. City of Gastonia, 635 F.3d 634, 639 (4th Cir. 2011). The Browns have not alleged that Frazier directly violated their rights. Rather, they contend that Frazier's deficient training and supervision of his deputies, resulted in violations of the Browns' rights.

Supervisory officials are not vicariously liable for constitutional injuries inflicted by their subordinates. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). However, in certain narrow circumstances, a supervisor may be liable for failure to adequately train or supervise subordinates. See, e.g., Connick v. Thompson, 131 S. Ct. 1350, 1358–60 (2011); City of Canton v. Harris, 489 U.S. 378, 388–92 (1989). To state a claim against a supervisor for the failure to train or supervise subordinates, a plaintiff must plausibly allege that (1) the subordinates actually violated the plaintiff's constitutional or statutory rights, (2) the supervisor's failure to properly train or supervise the subordinates amounts to "deliberate indifference" to the rights of the plaintiff, and (3) this failure to train or supervise actually caused the subordinates to violate the plaintiff's rights. Connick, 131 S. Ct. 1358–60; Canton, 489 U.S. at 388–92; see Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000); Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Spell v. McDaniel, 824 F.2d 1380, 1389–90 (4th Cir. 1987); Cooper v. Brunswick Cnty. Sheriff's Dep't, 896 F. Supp. 2d 432, 451–53 (E.D.N.C. 2012); Smith v. Atkins, 777 F. Supp. 2d 955, 966–67 (E.D.N.C. 2011).

4

The Browns have plausibly alleged a violation of their constitutional rights and that Frazier supervised the individuals who caused the violation. As for the second requirement, deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Connick, 131 S. Ct. at 1360, (quotation omitted); see Wellington v. Daniels, 717 F.2d 932, 936 (4th Cir. 1983) (collecting cases); Kling v. Harris Teeter Inc., 338 F. Supp. 2d 667, 676 (W.D.N.C. 2002), aff'd, 86 F. App'x 662 (4th Cir. 2004) (per curiam) (unpublished). "Without notice that a course of training is deficient . . . , decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick, 131 S. Ct. at 1360.

The Browns do not allege a pattern of similar constitutional violations in their complaint. The Browns, however, do allege that Frazier's alleged failure to train or supervise made violations of citizens' constitutional rights foreseeable. See Compl. ¶¶ 69–70. The Supreme Court has acknowledged "the possibility that evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." Brown, 520 U.S. at 409. In theorizing about this possibility, the Court:

> posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Given the known frequency with which police attempt to arrest fleeing felons and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights, the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the highly predictable consequence, namely, violations of constitutional rights.

5

Connick, 131 S. Ct. at 1361 (citations and quotations omitted). Nonetheless, the exception to showing a pattern for foreseeable constitutional violations is very narrow. See id.; Brown, 520 U.S. at 409–10; Broderick, 225 F.3d at 456; Spell, 824 F.2d at 1390 ("[T]he specific deficiency ... must be such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." (quotations omitted)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 131 S. Ct. at 1359.

The Browns allege, inter alia, that the deputies entered the home and criminally assaulted Mr. Brown for no reason, called the Browns criminals and liars, and tried to get an emergency responder to file false criminal charges against Mr. Brown. Although the court deplores the alleged misconduct, no amount of training would prevent this type of alleged misconduct. Willis v. Blevins, No. 3:13cv278-HEH, 2013 WL 4430923, at *16 (E.D. Va. Aug. 16, 2013) (noting that no amount of training would prevent an officer from unilaterally fabricating evidence in a criminal investigation). Simply put, the Browns have not plausibly alleged that the deputies' alleged egregious behavior towards the Browns was "almost bound to happen" due to a deliberately indifferent deficiency in training or supervision. See id.; see also Connick, 131 S. Ct. at 1360–64; Canton, 489 U.S. at 389–92; Broderick, 225 F.3d at 456. Thus, the Browns have not plausibly alleged deliberate indifference.

Moreover, the Browns fail to plausibly allege the requisite causal link between Frazier's alleged failure to train or supervise and their injuries. To state a claim for failure to train or supervise, a claimant must identify the specific deficiency in the training or supervision process. See, e.g., Semple v. City of Moundsville, 195 F.3d 708, 713 (4th Cir. 1999); Pleasants v. Town of

6

Louisa, 847 F. Supp. 2d 864, 884 (W.D. Va. 2012); Smith, 777 F. Supp. 2d at 967. The Browns do not identify a specific training or supervision deficiency. Rather, their complaint includes only general allegations that the overall training or supervision program was deficient. See Compl. ¶¶ 51, 56, 66–71. Moreover, the alleged deficiency in training or supervision must be the actual cause of the alleged injury. See, e.g., Connick, 131 S. Ct. at 1358 n.5; Canton, 489 U.S. at 391; Pleasants, 847 F. Supp. 2d at 884; Smith, 777 F. Supp. 2d at 967–68. As discussed, the Browns' allegations involve alleged behavior of the deputies not ordinarily regulated by professional training. See Willis, 2013 WL 4430923, at *16. After all, would a sheriff really have to conduct a training program advising deputies not to repeatedly criminally assault a person in medical distress? See id.; see Connick, 131 S. Ct. at 1368 (Scalia, J., concurring). To ask the question is to answer it. The deputies' alleged misconduct in this case was not caused by the failure to give specific training, but by the alleged miscreant deeds of the deputies. Thus, the Browns have failed to plausibly allege that a specific deficiency in Frazier's training or supervision of the deputies was the actual cause of the Browns' injuries.[1]

As for the Browns' motion to amend their complaint, the court should freely give leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, whether to grant a motion to amend is within the court's discretion. See Foman v. Davis, 371 U.S. 178, 182 (1962). "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010); see also Foman, 371 U.S. at 182. The court should deny leave to amend due to futility when the proposed amendment is on

---

[1] For reasons known only to the Browns and their counsel, the Browns have not sued the deputies for their alleged behavior.

7

its face insufficient to survive a Rule 12(b)(6) motion to dismiss. See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995); Davis v. Piper Aircraft Corp., 615 F.2d 606, 613–14 (4th Cir. 1980).

The Browns' proposed amended complaint does not cure the complaint's deficiencies. The proposed amended complaint alleges that the deputies' actions "were part of a widespread pattern of unconstitutional conduct and were part of the conduct that exhibited a deliberate indifference to the constitutional rights of citizens of Halifax County." Am. Compl. [D.E. 16-1] ¶ 82. However, the Browns do not support this conclusory allegation with one specific example. As such, the allegation is insufficient to survive a Rule 12(b)(6) motion to dismiss. See Iqbal, 556 U.S. at 678–79; see, e.g., Connick, 131 S. Ct. at 1360; Van Leer v. Deutsche Bank Sec., Inc., 479 F. App'x 475, 479–83 (4th Cir. 2012) (unpublished); In re PEC Solutions, Inc. Sec. Litig., 418 F.3d 379, 390–91 (4th Cir. 2005); Willis, 2013 WL 4430923, at *16.

The Browns' proposed amended complaint also alleges that the deputies' actions "were the result of [a] lack of supervision and training and/or inadequate training to respond to recurring situations involving citizens in need of medical care who are exhibiting symptoms of distress or disturbance." Am. Compl. ¶ 79; see also id. ¶¶ 80–81. However, the Browns have not plausibly alleged that additional training on responding to citizens in need of medical care would have prevented the alleged injury here, which included criminally beating Mr. Brown for no reason, falsely accusing the Browns of being drug users or dealers, and encouraging a first responder to falsely press criminal charges against Mr. Brown. The Browns have not plausibly alleged that the alleged failure to train or supervise these deputies to respond to medical emergencies directly caused these particular injuries. See, e.g., Connick, 131 S. Ct. at 1358 n.5; Willis, 2013 WL 4430923, at *16. The remaining proposed allegations do not impact the court's Rule 12(b)(6) analysis. Thus,

8

the Browns' failure to train or supervise claim in the amended complaint is implausible, and the court denies the motion to amend as futile.

Because the court dismisses the Browns' federal-law claims, only state-law claims remain. See Compl. ¶¶ 92–129. Thus, the court lacks federal question jurisdiction over this case. See 28 U.S.C. § 1331. Because all parties are North Carolina citizens, the court lacks diversity jurisdiction. See 28 U.S.C. § 1332(a); Clark v. Velsicol Chem. Corp., 944 F.2d 196, 197 (4th Cir. 1991). The court declines to exercise supplemental jurisdiction over the Browns' state-law claims. See 28 U.S.C. § 1367(c)(3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350–51 & n.7 (1988); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 616 (4th Cir. 2001). Accordingly, the court dismisses the state-law claims without prejudice.

II.

In sum, as to the Browns' federal claims, the court GRANTS defendants' motion to dismiss [D.E. 10] and DISMISSES these claims. The court also DISMISSES Halifax County as a defendant. The court declines to exercise supplemental jurisdiction over the Browns' remaining state-law claims against Frazier and DISMISSES these claims without prejudice. The court DENIES as futile the Browns' motion to amend the complaint [D.E. 16].

SO ORDERED. This **22** day of October 2013.

JAMES C. DEVER III
Chief United States District Judge